## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02209-DME-MJW

JANE DOE and JOHN DOE,

     Plaintiffs,

     v.

BENJAMIN JASON ELIA HOFSTETTER,

     Defendant.

---

### ORDER GRANTING DEFAULT JUDGMENT AND SETTING HEARING

---

Pending before the Court are two motions. The first is Jane Doe and John Doe's ("Plaintiffs") amended motion for entry of default judgment against Benjamin Jason Elia Hofstetter ("Defendant"), filed on January 9, 2012 (the "Motion for Default Judgment"). (Doc. 13.) The second is Plaintiffs' motion for a preliminary injunction against Defendant, filed on May 11, 2012 (the "PI Motion"). (Doc. 14.)

For the reasons discussed below, the Court GRANTS the Motion for Default Judgment as to Counts Four, Five, and Eight of Plaintiffs' complaint. Accordingly, the Court ORDERS the parties to appear at a hearing at 2:00 p.m. on July 10, 2012, in Courtroom C202 of the Byron Rogers Courthouse in this District, for the presentation of evidence and argument regarding the amount of damages and the scope of injunctive

1

and/or declaratory relief that may be warranted.  The Court further ORDERS Plaintiffs to submit a brief, not to exceed ten pages in length, regarding their requested damages and injunctive relief, no later than July 3, 2012.  Finally, in light of those rulings, and because it is not apparent that Plaintiffs have attempted to confer with Defendant regarding the PI Motion, the Court DENIES the PI Motion.

## I.     Background

Plaintiffs filed their complaint in the District of Colorado on August 23, 2011, seeking relief under federal statutes, common-law tort causes of action, and state statutes. (Doc. 1.)  Plaintiffs sought compensatory and punitive damages, injunctive relief, and costs and fees.  Defendant was personally served with the complaint in Tennessee (where he apparently resides) on September 12, 2011.  (Doc. 4.)  Defendant was informed that his answer to the complaint was due within 21 days of service or else default would be entered against him for the relief demanded in the complaint.  He has never filed an answer or otherwise communicated with the Court or with Plaintiffs' counsel.

On October 26, 2011, Plaintiffs filed a motion for default pursuant to Fed. R. Civ. P. 55(a) (Doc. 5), and on October 28, 2011, the Clerk entered default against Defendant (Doc. 8).  On November 30, 2011, Plaintiffs moved for the Court to enter default judgment against Defendant (Doc. 12), and on January 9, 2012, filed the amended Motion for Default Judgment.  Defendant has not responded within the time limit prescribed by D.C.COLO.LCivR 7.1(c).  The Motion for Default Judgment is therefore ripe for determination.

Plaintiffs later moved for a preliminary injunction against Defendant in their PI Motion, filed May 11, 2012, seeking injunctive relief pending the Court's consideration of the Motion for Default Judgment.

## II.      Default judgment under Federal Rule of Civil Procedure 55

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The clerk's entry of default "does not constitute a judgment but is rather an order precluding the defaulting party from making any further defense in the case as far as his or her liability is concerned." 46 AM. JUR. 2D JUDGMENTS § 233 (2008). "After an entry of default, a defendant cannot defend a claim on the merits." Olcott v. Del. Flood Co., 327 F.3d 1115, 1125 n.11 (10th Cir. 2003).

Once default has been entered, "[if] the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against [the] defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). However, "[i]n all other cases," such as this one, "the [plaintiff] must apply to the court for a default judgment" Id. 55(b)(2). The decision to enter default judgment is a matter of the court's "sound judicial discretion." CHARLES ALAN WRIGHT ET AL., 10A FED. PRAC. & PRO. CIV. 3d § 2685. Exercising that discretion, the court "may conduct hearings or make referrals—

3

preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

Where, as in this case, a defendant "fail[ed] to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually." Burlington No. R.R. Co. v. Huddleston, 94 F.3d 1413, 1415 (10th Cir. 1996); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Therefore, in deciding whether to enter default judgment, the court takes as true all of the factual allegations in the complaint. WRIGHT, supra, § 2688. However, "once default is entered, 'it remains, for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010) (quoting WRIGHT, supra, § 2688). "There must be a sufficient basis in the pleadings for the judgment entered." Id. (internal quotation marks, citation omitted).

## III.   Factual findings

The Court makes the following factual findings based on allegations in Plaintiffs' unanswered complaint. See Burlington Northern, 94 F.3d at 1415.

1. Plaintiffs are married residents of Colorado.  Defendant is a Tennessee resident.  (Doc. 1 ¶¶ 4, 36.)

2. In November 2010, Defendant published a blog (the "November 2010 Blog") on the internet that contained "intimate, private and personal photographs" of Jane Doe (the "Private Photographs").  Jane Doe did not authorize the publication of the Private Photographs.  Defendant published the Private Photographs on other internet sites as well, and distributed the Private Photographs to third parties.  (Id. ¶¶ 11-14.)

3. Defendant published false statements about Plaintiffs on the November 2010 Blog, including false statements about Plaintiffs' marriage as well as exaggerations of his relationship with Jane Doe, with the purpose of negatively affecting Plaintiffs' marriage.  (Id. ¶¶ 15-18.)

4. Also around that time, Defendant made efforts to contact Jane Doe by email and by cellular telephone.  (Id. ¶ 19.)

5. Defendant communicated about Jane Doe through his Twitter account, @TheJasonElia.  Defendant sent Twitter messages ( "tweets") to Jane Doe using his Twitter account.  (Id. ¶¶ 20-21.)

6. Jane Doe instructed Defendant to refrain from communicating or attempting to communicate with her.  Defendant refused to cease sending communications to Jane Doe.  (Id. ¶¶ 22-23.)

7. On November 11, 2010, counsel for Plaintiffs sent a letter to Defendant demanding the removal of the November 2010 Blog ("November 11 Letter").  The November 11

Letter also demanded that the Defendant cease communicating with or about Jane Doe.  On or before November 12, 2010, Defendant removed the November 2010 Blog.  After receiving the November 11 Letter, Defendant also deleted the Twitter account @TheJasonElia.  For a short amount of time, Jane Doe did not receive communications from Defendant.  (Id. ¶¶ 24-29.)

8.  In December 2010, Defendant sent Jane Doe unsolicited anonymous emails.  On January 29, 2011, Defendant sent Jane Doe an unsolicited email from the email address nasojjason@gmail.com that contained descriptions of physical intimacy.  The December and January emails were harassing in nature.  For a few months thereafter, the Defendant ceased his harassing conduct.  (Id. ¶¶ 30-35.)

9.  In June 2011, Defendant sent emails to John Doe containing the Private Photographs of Jane Doe, seeking to interfere with and negatively to affect Plaintiffs' marriage. (Id. ¶¶ 36-37.)

10. On June 7, 2011, Defendant sent Jane Doe a text message stating he loved her.  On June 12, 2011, Defendant sent Jane Doe another text message.  Defendant also sent Jane Doe an email containing photographs of the two of them.  He indicated that he was deleting the photographs and she could have "them back."  (Id. ¶¶ 38-41.)

11. As of June 22, 2011, Defendant republished his blog (the "June 2011 Blog").  The June 2011 Blog again contained one or more of the Private Photographs.  Defendant again disclosed private facts about Jane Doe, and exaggerated the relationship he had with her, on the June Blog.  On August 13, 2011, Defendant published what was

6

purported an email from Jane Doe to him.  Defendant's intent was to destroy

Plaintiffs' marriage, to cause Plaintiffs' emotional distress, to harass them, and to

stalk them.  (Id. ¶¶ 42-47.)

12. Defendant created a Twitter account (the "Fake Twitter Account") purporting to be

Jane Doe, using the Private Photographs along with Jane Doe's name.  Defendant

impersonated Jane Doe and communicated with third parties using the Fake Twitter

Account.  Defendant distributed photographs of Jane Doe and the name of the Fake

Twitter Account to third parties.  The third parties further distributed and publicized

the photographs and the Fake Twitter Account.  Defendant intentionally used the Fake

Twitter Account to receive communications intended for Jane Doe, and on many

occasions did receive communications intended for her, knowing them to have been

intended for her.  Defendant disclosed the communications to third parties, and used

the communications to harm Jane Doe.  Jane Doe worked with Twitter to remove the

Fake Twitter Account.  (Id. ¶¶ 48-54, 78-83.)

13. Defendant created a second Twitter account ("Second Fake Twitter Account") using a

photograph of Jane Doe, once again purporting to be Jane Doe and once again

impersonating Jane Doe online.  Defendant used his own Twitter account,

@notjasonelia, to converse with the Second Fake Twitter Account and to impersonate

Jane Doe as though she were operating the account.  Defendant acted with intent and

actual malice in that he intended to harm Plaintiffs, intending to harm their marriage, to annoy them, and to alarm them.  (Id. ¶¶ 60-63.)[1]

## IV.   Jurisdiction

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."  Williams v. Life Sav. and Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

### 1.  Subject-matter jurisdiction

A plaintiff properly invokes federal-question jurisdiction under 28 U.S.C. § 1331 "when she pleads a colorable claim 'arising under' the Constitution or laws of the United States."  Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006) (citation omitted).  A federal claim is not colorable in this context "if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'"  Id. at 513 n.10 (citations omitted).  Meanwhile, a plaintiff properly invokes diversity jurisdiction under 28 U.S.C. § 1332 "when she presents a claim between parties of diverse citizenship that exceeds the jurisdictional amount, currently $75,000."  Id. at 513.  The amount-in-controversy requirement is satisfied in a good-faith claim unless it appears to a legal

---

[1] Plaintiffs made further factual allegations, regarding a Third Fake Twitter account that has been removed, in their PI Motion, citing an attached affidavit from Jane Doe.  (Doc. 14 at 4.)  However, the Court does not take those allegations to be true as a matter of course, unlike the allegations in the unanswered complaint.  See Burlington Northern, 94 F.3d at 1415; Fed. R. Civ. P. 8(b)(6).  In any event, those allegations, even if accepted as true, would not materially alter the Court's legal analysis.

certainty that the claim is really for less than the jurisdictional amount.  St. Paul Mercury

Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938).

In this case, the Court has subject-matter jurisdiction under 28 U.S.C. § 1331 as

well as § 1332.  With respect to § 1331, three of Plaintiffs' claims arise under three

federal statutes, and at least one of those claims is colorable (see infra).  With respect to §

1332, the parties are of diverse citizenship, and it does not appear to a legal certainty that

Plaintiffs' claims are really for less than $75,000 in relief.

2.  Personal jurisdiction

For the Court to assert personal jurisdiction over a citizen of another state, two

things must be established: "first, that the exercise of jurisdiction is sanctioned by the

[forum] state's long-arm statute; and second, that it comports with the due process

requirements of the Fourteenth Amendment."  Marcus Food Co. v. DiPanfilo, 671 F.3d

1159, 1166 (10th Cir. 2011).  In this case, because the long-arm statute of Colorado (the

forum state) is coterminous with federal constitutional limits, see Dudnikov v. Chalk &

Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008), the "first, statutory,

inquiry effectively collapses into the second, constitutional, analysis," id.  That latter, due

process analysis is two-fold.  DiPanfilo, 671 F.3d at 1166.

Under the first component of the due process inquiry, "the [party] must have

'minimum contacts' with the forum state, demonstrating that he 'purposefully availed'

himself of the protections or benefits of the state's laws and 'should reasonably anticipate

being haled into court there.'"[2] Id. (citation omitted).  In the "unique" context of communications and activities on the internet, the Tenth Circuit has "adapt[ed] the analysis of personal jurisdiction [by] placing emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible from there."  Shrader v. Biddinger, 633 F.3d 1235, 1240 (10th Cir. 2011).  With respect to email in particular, "the apt analogues may be phone calls, faxes, and letters made or sent by out-of-state defendants to forum residents," which "have been found sufficient to support specific personal jurisdiction when they directly give rise to the cause of action."  Id. at 1247.  However, because "email addresses typically do not reveal anything about the geographic location of the addressee[,] . . . if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate purposeful direction of the message to the forum state."  Id. at 1247-48.

Then, if a party has minimum contacts with the forum state, the second prong of the due process inquiry is "ensuring that the exercise of jurisdiction over him 'does not offend "traditional notions of fair play and substantial justice."'"  DiPanfilo, 671 F.3d at 1167 (citation omitted).  To this end, the Court considers the following factors:

---

[2] "The minimum contacts standard is also satisfied, and a court may maintain general jurisdiction over a nonresident defendant, based on the defendant's 'continuous and systematic' general business contacts with the forum state."  Trujillo v. Williams, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006) (citation omitted).  The facts alleged in this case, however, do not implicate "general" personal jurisdiction.  Rather, the applicable inquiry is whether the Court has "specific" personal jurisdiction over Defendant, under the standard outlined above.  See id. at 1217-18.

(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

Id. at 1167.

In this case, the Court concludes that it has personal jurisdiction over Defendant, at the least based on Defendant's harassing emails to John Doe, containing the Private Photographs of Jane Doe. Those emails comprise part of the foundation of Plaintiffs' intentional infliction of emotional distress claims. The emails demonstrate that Defendant purposefully directed tortious activity at Colorado—as long as Defendant knew that John Doe was located in this state. See Shrader, 633 F.3d at 1248; Dudnikov, 514 F.3d at 1072. To that end, the facts that Defendant contacted Jane Doe's cellular telephone (which presumably has a Colorado area code), was sent a letter by Jane Doe (presumably with a Colorado return address), had a prior relationship with Jane Doe (who lives in Colorado with John Doe), and continued to post statements about Jane Doe, are sufficient to show that Defendant knew that John Doe, the email recipient, was located in Colorado. Therefore, Defendant has the requisite minimum contacts with Colorado such that he should have reasonably anticipated being haled into court in this forum. See Shrader, 633 F.3d at 1248; DiPanfilo, 671 F.3d at 1166.

Further, this Court's exercise of jurisdiction over Defendant "does not offend 'traditional notions of fair play and substantial justice.'" DiPanfilo, 671 F.3d at 1167 (citation omitted). Only one of the five factors the Court considers in this inquiry—the

11

burden on Defendant of litigating in this forum, see id.—militates against exercising

personal jurisdiction.  Under the "sliding-scale approach" employed in this evaluation,

the Court concludes that is insufficient to defeat jurisdiction in this case.  See id. at 1169.

## IV.  Evaluating Plaintiffs' legal claims

1.  Count One – "Violation of the Electronic Communications Privacy Act (18 U.S.C. § 2510 et seq.)" (*Jane Doe*)

Under this first count, Plaintiffs assert that Defendant's conduct relating to his

impersonation of Jane Doe on Twitter violates the federal Electronic Communications

Privacy Act ("ECPA"). This complained-of conduct also comprises part of the conduct

complained of under Count Four, regarding intentional infliction of emotional distress

vis-à-vis Jane Doe.  As discussed below, the Court determines that Defendant is liable

under Count Four, and therefore will award relief as appropriate under that count.

Meanwhile, the ECPA does not require courts to award any particular form of civil relief

even when liability is found to exist.  See 18 U.S.C. § 2520(a)-(b); see also, e.g., Directv,

Inc. v. Barczewski, 604 F.3d 1004, 1009 (7th Cir. 2010).  As such, the Court declines to

evaluate the merits of Jane Doe's ECPA claim, since any relief the Court might award

would be duplicative of relief awarded based on Plaintiffs' intentional infliction of

emotional distress claim.  See Lexton-Ancira Real Estate Fund, 1972 v. Heller, 826 P.2d

819, 823 (Colo. 1992) ("Generally, a plaintiff may not receive a double recovery for the

same wrong.")

2.  Count Two – "Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030" (*Jane Doe*)

Plaintiffs also seek relief under the federal Computer Fraud and Abuse Act ("CFAA") in connection with Defendant's Twitter impersonation.  Like the ECPA, the CFAA does not mandate any particular relief upon a finding of civil liability.  See 18 U.S.C. § 1030(g).  Accordingly, as with Count One, the Court declines to evaluate the merits of this claim, because any relief the Court might grant under the CFAA would be redundant with relief the Court may grant under Count Four.

3. Count Three – "Violation of the Stored Communications Act (18 U.S.C. § 2701 et seq.)" (*Jane Doe*)

Under this Count, Plaintiffs assert that Defendant's Twitter impersonation also violates the federal Stored Communications Act ("SCA").  The SCA, part of the 1986 amendments to Wiretap Act, was "created . . . to cover access to stored communications and records."  United States v. Steiger, 318 F.3d 1039, 1047 (11th Cir. 2003).  The SCA makes it unlawful

(1) intentionally [to] access[] without authorization a facility through which an electronic communication service is provided; or (2) intentionally [to] exceed[] an authorization to access that facility; and thereby [to] obtain[], alter[], or prevent[] authorized access to a wire or electronic communication while it is in electronic storage in such system.

18 U.S.C. § 2701(a).  Section 2707(a) provides a civil cause of action to "any . . . person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind"; and § 2707(c) states that "in no case shall a person entitled to recover receive less than the sum of $1,000."  As such, the Court must evaluate the merits of this claim.

13

The Court concludes that Plaintiffs fail to state a claim under the SCA.  The Plaintiffs have not persuaded the Court that violating Twitter's terms of service by creating an account in Jane Doe's name qualifies as "exceed[ing] an authorization to access" Twitter, assuming Twitter is "a facility through which an electronic communication service is provided." See 18 U.S.C. § 2701(a).  Defendant did not, for instance, hack into someone else's account and obtain their stored communications. See, e.g., Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F. Supp. 2d 548, 555 (collecting cases recognizing that the SCA may be violated in cases of hacked email accounts).  Rather, Defendant accessed an account that he himself made, albeit in a way that contravened Twitter's account-creation policy. Cf. State Wide Photocopy Corp. v. Tokai Fin. Servs., Inc, 909 F.Supp. 137, 145 (S.D.N.Y. 1995) ("[I]t appears that the [§ 2701] was primarily designed to provide a cause of action against computer hackers (i.e., electronic trespassers).").  Moreover, it is worth noting that Plaintiffs' theory of violation of the SCA—unauthorized access to stored communications—is incompatible with their theory of violation of the ECPA—interception of communications prior to storage of the communications. See, e.g., Konop v. Haw. Airlines, Inc., 302 F.3d 868, 878-79 (9th Cir.2002); Pure Power Boot Camp, 587 F. Supp. 2d at 557.

4.   Count Four – "Intentional infliction of emotional distress" (_Jane Doe_)

Under this count, Plaintiffs assert that Defendant committed the tort of intentional infliction of emotional distress vis-à-vis Jane Doe by publishing the Private Photographs on the internet, sending the photographs to her husband, publishing false statements about

her and her marriage, and impersonating her, among other conduct.   The tort of

intentional infliction of emotional distress is committed when "'[o]ne who by extreme

and outrageous conduct intentionally or recklessly causes severe emotional distress to

another is subject to liability for such emotional distress . . . .'" <u>Coors Brewing Co. v.

Floyd</u>, 978 P.2d 663, 666 (Colo. 1999) (quoting Restatement (Second) of Torts § 46

(1965)).[3]   Liability will only be found where conduct was "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community." <u>Id.</u> (internal

quotation marks, citation omitted).

The Court determines that "the unchallenged facts [of the complaint] constitute a

legitimate cause of action," <u>Bixler</u>, 596 F.3d at 762 (internal quotation marks, citation

omitted), of intentional infliction of emotional distress vis-à-vis Jane Doe.   Defendant's

conduct was extreme and outrageous, including his publication of the Private

Photographs of Jane Doe on the internet, along with his emailing both Plaintiffs with

Private Photographs with the purposes of harassment and interference with Plaintiffs'

marriage.   Defendant's impersonation of Jane Doe on Twitter further exacerbates the

outrageousness of his conduct.   These actions rise above "mere insults, indignities,

threats, annoyances, petty oppression, or other trivialities," and would lead "an average

member of the community . . . to exclaim, 'Outrageous!'"   Restatement (Second) of Torts

---

[3] The substantive tort law of Colorado, the forum state, applies in this case.  <u>See, e.g.</u>,
<u>Pound v. Ins. Co. of No. Am.</u>, 439 F.2d 1059, 1062 (10th Cir. 1971).

§ 46 cmt. d.; cf. Dunn v. Moto Photo, Inc., 828 S.W.2d 747, 751-55 (Tenn. App. 1992) (applying the Restatement (Second) of Torts § 46 and reversing a directed verdict for defendant where defendant film developer showed nude pictures of plaintiff customer to third parties).  The facts that Defendant's conduct "might be considered a pattern of harassment," and that he was aware he was causing emotional distress to Jane Doe (judging from her repeated pleas to Defendant to cease communicating with and about her), both militate towards finding that his behavior was extreme and outrageous.  See Riske v. King Soopers, 366 F.3d 1085, 1089-90 (10th Cir. 2004).  Finally, according to the undisputed facts of the complaint, Defendant engaged in that conduct with the intent of causing Jane Doe severe emotional distress, and Jane Doe did in fact suffer severe emotional distress as a result.  Thus, Plaintiffs are entitled to relief under Count Four.

   5.  Count Five – "Intentional infliction of emotional distress" (*John Doe*)

   Under this count, Plaintiffs assert an intentional infliction of emotional distress claim with respect to Defendant's conduct vis-à-vis John Doe.  While this is a closer question, the Court determines that Defendant is liable here, too.  Emailing John Doe the Private Photographs of his wife, and publishing pictures of her online in tandem with misleading statements about Defendant's relationship with her and about Plaintiffs' marriage, are sufficiently extreme and outrageous to be actionable, keeping in mind the pattern of harassment as well as Defendant's knowledge of the distress.  Also, according to the complaint, Defendant engaged in that conduct with the intent of causing John Doe

severe emotional distress, and John Doe did in fact suffer severe emotional distress as a result.  Therefore, Plaintiffs are entitled to relief under Count Five.

6.  Count Six – "Intrusion upon seclusion (private photographs)" (*Jane Doe*)

This claim is based on a subset of the same tortious conduct as her intentional infliction of emotional distress claim—namely, Defendant's publication of the Private Photographs on the internet, and distribution of them to third parties.  The theory of damages, based on resultant emotional anguish, is the same here, too.  As such, since the Court has already determined that Defendant is liable under Count Four, the Court declines to evaluate the merits of this claim.  See Heller, 826 P.2d at 823.

7.  Count Seven – "Intrusion upon seclusion (impersonation)" (*Jane Doe*)

Under this count, Plaintiffs once again seek relief based on Defendant's impersonation of Jane Doe.  Once again, the Court need not consider that theory further, for the reasons discussed above.

8.  Count Eight – "Public disclosure of private facts" (*Jane Doe*)

To the extent that Plaintiffs seek relief under this count based on Defendant's dissemination of the Private Photographs, this claim is redundant with Count Four. However, uniquely under this count, Plaintiffs emphasize that the facts of the existence of a relationship between Jane Doe and Defendant, and that Defendant had taken the Private Photographs, were private facts whose communication to the public caused Jane Doe anguish and would be highly offensive to a reasonable person.  This separate theory of

tortious conduct (and separate potential basis for relief) therefore merits independent

consideration.

> The tort of disclosure of private facts requires the following elements:
>
> (1) the fact or facts disclosed must be private in nature; (2) the disclosure must be made to the public; (3) the disclosure must be one which would be highly offensive to a reasonable person; (4) the fact or facts disclosed cannot be of legitimate concern to the public; and (5) the defendant acted with reckless disregard of the private nature of the fact or facts disclosed.

Robert C. Ozer, P.C. v. Borquez, 940 P.2d 371, 377 (Colo. 1997).

The Court concludes that Defendant's disclosure of his relationship with Jane Doe

in tandem with publishing the Private Photographs he took of her is actionable under this

tort theory.  First, facts were private in nature.  See id. at 377 ("[F]acts related to an

individual's sexual relations . . . are considered private in nature and the disclosure of

such facts constitutes an invasion of the individual's right of privacy.")  Second, the facts

were disclosed to the public.  See id. at 378.  Third, the disclosure would be highly

offensive because it "would cause emotional distress or embarrassment to a reasonable

person" under the "the circumstances of [this] particular case," in significant part because

Jane Doe is married.  See id.  Fourth, the private fact is not of a legitimate concern to the

public.  See id.  Finally, although Count Eight does not expressly allege it, it is inferable

from the complaint that Defendant acted with reckless disregard, as he "knew or should

have known that the fact . . . disclosed w[as] private in nature."  See id. at 379.  Thus,

Plaintiffs are entitled to relief under Count Eight.

9. Count Nine – "Stalking and Harassment" under C.R.S. §§ 18-3-602 and 18-9-111 (*both Plaintiffs*)

Under this count, Plaintiffs seek relief under Colorado's stalking and harassment statutes. These criminal statutes do not provide a civil cause of action, however. See C.R.S. §§ 18-3-602, 18-9-111.

10. Count Ten – "Injunctive relief" (*both Plaintiffs*)

Under this count, reincorporating all previous paragraphs in the complaint, Plaintiffs "seek a temporary and permanent injunction that provides for the remedies available through Colorado Revised Statutes § 13-14-102 and, in addition," compels Defendant to remove and to destroy the Public Photographs and any copies (including electronic) of them, and enjoins Defendant from contacting, impersonating, or otherwise harassing Plaintiffs, among other things. Since Plaintiffs do not assert any independent basis for relief, here, but rather simply summarize the injunctive relief they seek for the conduct previously alleged, the Court need not rule on this count independently. Rather, following a hearing, the Court will award whatever injunctive relief may be warranted on the basis of the counts, above, under which the Court has determined Defendant is liable.

The Court declines to enter a preliminary injunction now, since Plaintiffs have not represented to the Court that they attempted to confer with Defendant regarding their PI

Motion under Fed. R. Civ. P. 65(a).  See D.C.COLO.LCiv.R 7.1(A).[4]  The issues raised

in the PI Motion will be addressed at the upcoming hearing.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that default judgment be

entered against Defendant on Counts Four, Five, and Eight of Plaintiffs' complaint.

It is further ORDERED that the parties appear at a hearing at 2:00 p.m. on July 10,

2012, in Courtroom C202 of the Byron Rogers Courthouse.  At the hearing, the Court

will entertain evidence and argument regarding the amount of damages (which is

uncertain) and the scope of injunctive and/or declaratory relief that may be warranted in

this case.  See Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings or make

referrals . . . when, to enter or effectuate judgment, it needs to: . . . (B) determine the

amount of damages; (C) establish the truth of any allegation by evidence; or (D)

investigate any other matter."); see also Am. Red Cross v. Cmty. Blood Ctr. of the

Ozarks, 257 F.3d 859, 864 (8th Cir. 2001) ("[F]acts relating to the amount of damages

must be proven in a supplemental hearing or procedure."); cf. Fed. R. Civ. P. 8(b)(6) (a

party's failure to deny an allegation does not result in an admission of allegations

"relating to the amount of damages").  Plaintiffs are ORDERED to submit a brief to the

---

[4] D.C.COLO.LCiv.R 7.1(A) states: "Duty to Confer. The court will not consider any motion, other than a motion under Fed. R. Civ. P. 12 or 56, unless counsel for the moving party . . . before filing the motion, has conferred or made reasonable, good-faith efforts to confer with opposing counsel or a pro se party to resolve the disputed matter.  The moving party shall state in the motion, or in a certificate attached to the motion, the specific efforts to comply with this rule."

Court on their requested damages and injunctive relief by July 3, 2012.  That brief shall not exceed ten pages in length.

If Defendant appears at the hearing, the Court would entertain argument from him as to why this default judgment ought to be set aside.  See Fed. R. Civ. P. 55(c) ("The court . . . may set aside a default judgment under Rule 60(b).").

Finally, the Court DENIES Plaintiffs' PI Motion (Doc. No. 14).

DATED this 13th day of June, 2012.

BY THE COURT:

s/ David M. Ebel

_____
David M. Ebel
United States Circuit Judge